UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TERON WATSON,

                **Plaintiff,**

              - against -

BANK OF AMERICA, N.A.,

              **Defendant.**
---------------------------------------------------------------X

**COMPLAINT**

**Plaintiff Demands a Jury Trial**

Plaintiff, TERON WATSON, by and through his attorneys The Law Offices MICHAEL B. PALILLO, P.C., upon information and belief, alleges of Defendant BANK OF AMERICA, N.A., as follows:

## NATURE OF CLAIMS

1. Plaintiffs complain that Defendant violated their rights under 42 U.S.C. § 1981, N.Y. City Admin. Code § 8-101, et seq. ("New York City Human Rights Law" or "NYCHRL"), N.Y. Executive Law § 290, et seq. ("New York State Human Rights Law" or "NYSHRL"). Additionally, Plaintiff also alleges New York State claims under the theories of negligent hiring, training, and supervision.

2. Plaintiffs seek declaratory and injunctive relief to redress the injuries Plaintiffs suffered as a result of Defendant's actions.

3. Defendant is liable for the conduct of its managers and agents who exercised managerial and supervisory responsibility, and because Defendant had knowledge of their employees and agents' discriminatory conduct, Defendant acquiesced in such conduct by failing to take immediate and appropriate corrective action.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims in this action under the provisions of 28 U.S.C. §§ 1331 and 1367.

5. This Court has subject matter jurisdiction over the claims in this action under the provisions of 42 U.S.C. § 1981.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Plaintiff Teron Watson is a male citizen of the United States residing in New York, who has dark skin and is African-American.

9. Defendant Bank of America N.A. is a retail banking company incorporated in Delaware and headquartered in Charlotte, North Carolina, with offices and branches in New York, New York.

## FACTUAL ALLEGATIONS

10. On or around March 31, 2016, Plaintiff Watson entered a Bank of America branch located on 34th Street and 5th Avenue in New York, New York.

11. Upon information and belief, the above-mentioned premises were owned, maintained, controlled, supervised, subleased and possessed, leased and/or operated by Defendant.

12. Plaintiff's purpose in going to this Bank of America branch location was to cash a check that he had received on March 30, 2016. The check itself was issued through a Bank of America account to Plaintiff Watson, in the amount of $4,000.

13. When Plaintiff visited this Bank of America branch, he was wearing khaki pants and a button up shirt.

14. As Plaintiff entered this Bank of America branch, he was approached by a middle aged Caucasian male named Harry DeScabello.

15. Upon information and belief, Mr. DeScabello was the branch manager of this Bank of America branch.

16. Plaintiff spoke with Mr. DeScabello for approximately 5 minutes and explained that he wanted to cash the check. Mr. DeScabello asked Plaintiff when and where he had gotten the check. Plaintiff informed him that he had received it that day from Prime Case Funding, a lawsuit advance funding company.

17. Mr. DeScabello looked at the Plaintiff's documentation, including the check, and then escorted him to a bank teller, a female who was approximately 30 years old.

18. Plaintiff showed the teller his driver's license, his social security card, and a credit card to verify his identity. He also informed the teller that he previously maintained a Bank of American account that should also verify his identity.

19. The teller told Plaintiff it would cost $4.95 to cash the check.

20. The teller ran the check through a scanning machine, which verified the authenticity of the check.

21. The teller instructed Plaintiff to put his fingerprint on the check before it could be cashed, which he did.

22. At this point, Plaintiff noticed that several employees of the bank were staring at him.

23. While waiting for the check to be cashed, the bank teller asked the bank manager to speak with the Plaintiff.

24. Mr. DeScabello then approached the Plaintiff, while standing behind the teller's window.

25. The bank manager then told the Plaintiff he believed the check was fraudulent.

26. Plaintiff asked Mr. DeScabello why he believed this but Mr. DeScabello refused to go into detail or provide any further explanation.

27. Plaintiff was extremely distressed because the check was authentic.

28. Plaintiff, in front of the bank's employees, called the company that issued the check, Prime Case Funding, to verify that the check was authentic. The customer service representative of Prime Case Funding informed Plaintiff that there was no problem with the check and asked to speak to the branch manager or other bank employees.

29. The bank's employees refused to speak to the Prime Case Funding customer service representative. Instead, Mr. DeScabello asked Plaintiff to come with him to a waiting area in the bank. He again told Plaintiff that he would not cash his check, and told Plaintiff to get another check.

30. Plaintiff again asked why the check could not be cashed. Mr. DeScabello said "guy, I am not cashing your check."

31. The bank's employees had no reason to doubt the authenticity of the check.

32. The Plaintiff was not treated fairly based on the color of his skin and he was racially profiled, because there was no legitimate reason for his attempt to cash the check to be denied

33. Thereafter the Plaintiff went to another Bank of America branch location, on 1293 Broadway in New York, New York, to attempt to cash the check there.

34. Plaintiff approached a female teller to cash the check. The teller asked why there was a fingerprint on the check, and Plaintiff told her about the incident at the other bank.

35. The female teller then asked another employee, a Latino male, to come to the teller window, who upon information and belief was the Branch Manager

36. This employee told the Plaintiff that the amount of the check was too high for the bank to cash to cash.

37. Plaintiff again felt that he was not treated fairly based on the color of his skin and left this Bank of American location.

38. Plaintiff called Bank of America's customer service line to inquire about cashing the check. He asked the customer service representatives, a female whose name was Emilia, and a male whose name he does not recall, if Bank of America had a limit for cashing Bank of America endorsed checks. The customer service representative told the Plaintiff that there was no limit under these circumstances.

39. This Bank of America Branch refused to cash his check.

40. Plaintiff went to a third nearby Bank of America location in Man and he approached a receptionist, a middle-aged male. Plaintiff ask if he could cash the check, exhibited the check and was told that he could not cash the check because it was for too much money.

41. Plaintiff again called Bank of America's customer service line. He again asked the customer service representative, this time a male, if Bank of America had a limit for cashing Bank of America endorsed checks. The customer service representative again told the Plaintiff that there was no limit under these circumstances.

5

42. Plaintiff traveled to a Western Union store located on 23rd Street in Manhattan which contacted Prime Case Funding to verify the authenticity of the check, and the same check was cashed.

43. Western Union charged the Plaintiff approximately $40 to cash the check.

44. The above-described incidents caused Plaintiff to feel emotional and mental distress, in the form of embarrassment, humiliation and depression, both during and after the incidents.

45. Because there was no other reasonable justification for these actions, they were based on institutionalized racial animus held by Defendant and its employees, directed against Plaintiff because of the color of his skin and his race.

## AS A FIRST CAUSE OF ACTION AGAINST DEFENDANTS UNDER 42 U.S.C. §§ 1981 and 1988

46. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

47. By and through their actions, Defendant and its employees, agents and/or managers intentionally discriminated against the Plaintiff the basis of race and the color of his skin, by refusing to engage in a commercial transaction with him and subjecting him to a humiliating situation in public, all without cause, justification or evidence.

48. Defendants singled out Plaintiff and treated him in the manner described above because of his race and the color of his skin.

49. Defendants do not discriminate against non-minority customers in the manner in which the Plaintiff was discriminated against.

6

50. By and through their actions, Defendant and its employees, agents and/or mangers deprived the Plaintiffs their rights guaranteed under 42 U.S.C. § 1981.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK CITY HUMAN RIGHTS LAW

51. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

52. By reason of the foregoing, Defendant has violated the Administrative Code of the City of New York § 8-107, also known as the New York City Human Rights Law, which states that places of public accommodation cannot deny any of the "accommodations, advantages, facilities, or privileges thereof" based on a person's race.

53. Defendant has thereby violated the New York City Human Rights Law.

54. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer injuries and damages.

## AS A THIRD CAUSE OF ACTION AGAINST DEFENDANTS FOR DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW

55. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

56. By reason of the foregoing, Defendant has violated New York Executive Law § 290, *et seq.*, which states that places of public accommodation cannot deny any of the accommodations, advantages, facilities or privileges thereof based on a person's actual or perceived race or color.

57. The conduct of Defendant in refusing to conduct a transaction with Plaintiff has denied him the privileges of public accommodation based on Plaintiff's race and the color of his skin.

58. Defendant's policies and practices have had disparate impact on minority customers, including Plaintiffs, as he was subjected to disparate treatment.

59. Defendant has failed to monitor its employees, agents and/or managers adequately and therefore are responsible for their conduct.

60. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injuries and damages.

### AS A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS FOR NEGLIGENT HIRING, TRAINING AND SUPERVISION

61. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

62. In hiring and supervising employees, Defendant has a duty to prevent such personnel from engaging in discriminatory, tortious and otherwise unlawful conduct.

63. Upon information and belief, the Defendant's employees, agents, and/or managers who committed the above complained of acts had a propensity for discrimination, tortious conduct and violating the civil rights of minority customers, including Plaintiff.

64. Defendant negligently and/or recklessly failed to satisfy their duty of care in hiring, supervising and retaining personnel that engaged and continue to engage in a pattern and practice of civil rights violations, discrimination and other tortious conduct.

65. That the Defendant was negligent, careless and reckless in hiring and retaining its employees, including the above employees, agents and/or managers, in that said people

lacked the experience, deportment and ability to be employed by Defendant; that Defendant failed to exercise due care and caution in their hiring practices; and that Defendant, their agents, employees and/or managers were otherwise careless, negligent and reckless.

66. Defendant knew or should have known that their agents, employees and/or managers at Bank of American branch locations have engaged in racial profiling and subjected dark skinned and minority customers, including the Plaintiff, to civil rights violations based on their race, ethnicity and/or color.

67. Defendant knew or should have known that their policies and practices have created an unreasonable risk of civil rights violations, discrimination and other unlawful conduct that would harm people of color.

68. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injuries and damages.

**WHEREFORE,** Plaintiffs respectfully requests a judgment against the Defendant:

    A. Declaring that Defendant engaged in unlawful and discriminatory practices prohibited by 42 U.S.C. § 1981, New York State Human Rights Law and New York City Human Rights Law;

    B. Declaring that the Defendant was negligent in hiring, training, and supervision of its employees.

    C. Awarding Plaintiff compensatory damages for emotional pain, suffering, humiliation, embarrassment, inconvenience, mental anguish, loss of enjoyment of life, distress and injury to reputation, in an amount in excess of the jurisdiction of all lower courts;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff the cost of this action and reasonable attorney's fees to the fullest extent permitted by law; and,

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful and discriminatory practices.

## JURY DEMAND

Plaintiff hereby demands a jury of all issue to be tried.

Dated: New York, New York
       December 22, 2016

Michael B. Palillo Esq. (MP0044)
*Attorneys for Plaintiff*
The Law Offices of Michael B. Palillo, P.C.
277 Broadway, Suite 501
New York, New York 10007
Tel:    212-608-8959

Michael B. Palillo, an attorney duly admitted to practice law in the Courts of the State of New York affirms the following under penalties of perjury:

1. I am the attorney for the Plaintiff(s) in the above captioned matter. I have read the foregoing Summons and Complaint and know the contents thereof; the same is true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true based on a review of the files maintained in this office and conversations had with the Plaintiff(s) The reason why this verification is made by the undersigned attorney rather than the Plaintiff(s) is that the Plaintiff(s) do/does not reside in the County were in I maintain my office for the practice of law.

Dated: New York, New York
       December 22, 2016

_____
Michael B. Palillo

Case No.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERON WATSON,

        Plaintiff,

-against-

BANK OF AMERICA, N.A.,

        Defendant.

---

### SUMMONS & VERIFIED COMPLAINT

---

**Michael B. Palillo P.C.**
*Attorneys for Plaintiff(s)*
*Office and Post Office Address:*
**277 Broadway, Suite 501**
**New York, NY 10007**
**(212) 608-8959**
(212) 608-0304 Fax (Not for Service)
mpalillo@palillolaw.com
(Not for Service)

---

Signature (Rule 130-1.1-a)

_____
MICHAEL B. PALILLO, ESQ.